William L. Schmidt, SBN 206870
Jeffrey W. Eisinger, SBN 109299
**WILLIAM L. SCHMIDT, ATTORNEY AT LAW, P.C.**
P.O. Box 25001
Fresno. CA 93729
Tel: 559.261.2222
Email: legal.schmidt(@gmail.com

Attorneys for Plaintiffs DIONNE ESPINOZA and JAIME RUIZ,
individually and in their representative capacities.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DIONNE ESPINOZA, individually and as successor-in-interest to KRYS BRANDON RUIZ, deceased; JAIME RUIZ, individually and as successor-in-interest to KRYS BRANDON RUIZ, deceased,<br><br>              Plaintiffs,<br><br>*vs*.<br><br>CITY OF LOMPOC, a governmental entity; ANDREW S. WHITE, individually; MAURICIO T. CALDERON, individually; JULIO C. CARRILLO-BUENO, individually, and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FROM:**<br><br>**1.) UNREASONABLE SEARCH AND SEIZURE – UNLAWFUL DETENTION AND ARREST (42 U.S.C. § 1983)**<br>**2.) UNREASONABLE SEARCH AND SEIZURE - EXCESSIVE FORCE (42 U.S.C. § 1983)**<br>**3.) UNREASONABLE SEARCH AND SEIZURE – DENIAL OF MEDICAL CARE (42 U.S.C. § 1983)**<br>**4.) FOURTEENTH AMENDMENT- SUBSTANTIVE DUE PROCESS**<br>**5.) MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY; RATIFICA-TION (42 U.S.C. § 1983)**<br>**6.) BATTERY (STATE)**<br>**7.) NEGLIGENCE (STATE)**<br>**8.) FAILURE TO TRAIN (42 U.S.C. § 1983)**<br>**9.) VIOLATION OF BANE ACT (CAL. CIV. CODE §52.1)**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs DIONNE ESPINOZA and JAIME RUIZ, individually and as successors-in-interest to KRYS BRANDON RUIZ, deceased, and allege as follows:

**JURISDICTION AND VENUE**

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §§1331, 1343, and 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

**INTRODUCTION**

3.     This civil rights and state tort action seeks compensatory damages from the Defendants generally and punitive damages from Defendant Lompoc Police Officer MAURICIO CALDERON ("CALDERON") and Lompoc Police Corporal ANDREW S. WHITE ("WHITE") for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' son, Krys Brandon Ruiz ("DECEDENT"), on March 28, 2021.

4.     Plaintiffs DIONNE ESPINOZA and JAIME RUIZ are the parents and successors-in-interest of DECEDENT, a 26-year-old Mexican-American transgender man, who neither brandished, displayed nor was armed with a firearm, but who was subjected to a warrantless and unwarranted detention by law enforcement, then shot multiple times in the right shoulder and right back of the head by Officer CALDERON, armed with a rifle, and Corporal WHITE, who was armed with a pistol. Neither WHITE, CALDERON, nor Lompoc Police Officer JULIO C. CARRILLO-BUENO  ("CARRILLO"), who was also at

the scene, took any action to seek immediate emergency medical care and attention before the handcuffed Krys Brandon Ruiz died on the street.

## **PARTIES**

5.     At all relevant times, DECEDENT was an unmarried, childless adult residing in the City of Lompoc, County of Santa Barbara, California.

6.     Plaintiff DIONNE ESPINOZA ("MOTHER") is an individual residing in Santa Barbara County, California and is the natural mother of DECEDENT. MOTHER sues in her individual capacity as the mother of DECEDENT and also as successor-in-interest of DECEDENT. MOTHER seeks both survival and wrongful death damages under federal and state law.

7.     Plaintiff JAIME RUIZ ("FATHER") is an individual residing in Santa Barbara County, California and is the natural father of DECEDENT. FATHER sues in his individual capacity as the father of DECEDENT and also as successor-in-interest of DECEDENT. FATHER seeks both survival and wrongful death damages under federal and state law.

8.     At all relevant times, Defendant CITY OF LOMPOC ("CITY") was a municipal corporation existing under the laws of the State of California. CITY is a general law subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Lompoc Police Department ("LPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LPD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendants WHITE, CALDERON, CARRILLO, and DOES 1-10.

9.     Defendant WHITE is a law enforcement officer working for the LPD. At all relevant times, WHITE was acting under color of law within the course and scope of his duties as a sworn peace officer for the LPD. WHITE was acting with complete authority

1   and ratification of his principal, Defendant CITY, at all relevant times.

2       10.    Defendant CALDERON is a law enforcement officer working for the LPD.

3   At all relevant times, CALDERON was acting under color of law within the course and

4   scope of his duties as a sworn peace officer for the LPD. CALDERON was acting with

5   complete authority and ratification of his principal, Defendant CITY, at all relevant times.

6       11.    Defendant CARRILLO is a law enforcement officer working for the LPD. At

7   all relevant times, CARRILLO was acting under color of law within the course and scope

8   of his duties as a sworn peace officer for the LPD. CARRILLO was acting with complete

9   authority and ratification of his principal, Defendant CITY, at all relevant times.

10      12.    Defendants DOES 1- 5 are sworn peace officers working for the LPD. At all

11  relevant times, DOES 1-5 were acting under color of law within the course and scope of

12  their duties as police officers for the LPD. At all relevant times, DOES 1-5 were acting

13  with the complete authority and ratification of their principal, Defendant CITY.

14      13.    Defendants DOES 6-10 are managerial, supervisorial, and policymaking

15  employees of the CITY/LPD, who were acting under color of law within the course and

16  scope of their duties as managerial, supervisorial, and policymaking employees for the

17  CITY/LPD. DOES 6-10 were acting with the complete authority and ratification of their

18  principal, Defendant CITY.

19      14.    On information and belief, WHITE, CALDERON, CASTILLO and DOES

20  1-10 are residents of Santa Barbara County, State of California.

21      15.    In doing the acts and failing and omitting to act as hereinafter described,

22  Defendants WHITE, CALDERON, CARRILLO and DOES 1-5 were acting on the implied

23  and actual permission and consent of Defendants DOES 6-10 and the CITY.

24      16.    The true names and capacities, whether individual, corporate, association or

25  otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise

26  sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their

27  complaint to show the true names and capacity of these Defendants when they have been

28  ascertained. Each of the fictitiously-named Defendants is responsible in some manner for

1   the conduct or liabilities alleged herein.

2       17.    At all times mentioned herein, each and every defendant was the agent of

3   each and every other defendant and had the legal duty to oversee and supervise the hiring,

4   conduct, and employment of each and every defendant.

5       18.    All of the acts complained of herein by Plaintiffs against Defendants were

6   done and performed by said Defendants by and through their authorized agents, servants,

7   and/or employees, all of whom at all relevant times herein were acting within the course,

8   purpose, and scope of said agency, service, and/or employment capacity. Moreover,

9   Defendants and their agents ratified all of the acts complained of herein.

10      19.    WHITE, CALDERON, CARRILLO and DOES 1-10 are sued in their

11   individual capacity.

12                  **ADMINISTRATIVE PROCEEDINGS**

13      20.    On April 19, 2021 Plaintiff DIONNE ESPINOZA filed comprehensive and

14   timely claims for damages with CITY, Lompoc Claim Number 2333(21)-2, in substantial

15   compliance with California Government Code §910.

16      21.    On April 19, 2021 Plaintiff JAIME RUIZ filed a timely and comprehensive

17   claim for damages with CITY, Lompoc Claim Number 2333(21)-1, in substantial

18   compliance with California Government Code §910.

19      22.    On April 29, 2021, the City of Lompoc sent notices of rejection of all

20   Plaintiffs' claims.

21             **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22      23.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

23   through 22 of their Complaint with the same force and effect as if fully set forth herein.

24      24.    At the time of the shooting incident giving rise to this lawsuit, DECEDENT

25   was a 26 year-old anatomical female, 5 feet in height, weighing 150 lbs., christened Yvette

26   Krystella Ruiz, who identified as male and had lawfully changed his name and gender

27   designation so that at the time of his demise he was Krys Brandon Ruiz, a male.

28      25.    On March 28, 2021, around 8:00 p.m., LPD received a 911 call from an

anonymous caller who reported that a person holding a gun was walking in the alleyway between G and H streets near the old Lompoc Theater at 100 N. H Street, City of Lompoc. The anonymous 911 caller described the person as wearing dark clothing and possibly a mask.

26. At 8:08:28 p.m., CARRILLO arrived in the alley between H Street and G Street from Ocean Avenue and saw a person, later identified as DECEDENT, walking up the alley towards Walnut Avenue. The person was walking with an ambling gait away from, with his back to, the police cruiser, which slowly followed the person. The person was wearing a dark-colored hooded sweatshirt, with the hood covering the back, top and sides of the person's head, and both of the person's hands were in his pockets.

27. CARRILLO gave repeated verbal commands for DECEDENT to stop and to show his hands. DECEDENT did not stop, nor did he show his hands, but CARRILLO is unable to say whether DECEDENT heard the commands and chose to ignore them, as DECEDENT made no verbal response to CARRILLO'S commands, or otherwise indicated DECEDENT had heard said commands, but if, indeed, DECEDENT heard CARRILLO, those commands, which impeded DECEDENT'S forward movement along the alleyway amounted to an attempted *detention* without probable cause or reasonable suspicion. At no time did CARRILLO see a gun on the person, in the hands, or vicinity of DECEDENT.

28. DECEDENT, unable to continue along the alleyway due to the officers' positioning and show of authority, then moved into some tall bushes on the vacant lot bordering the alley, and CARRILLO lost sight of him.

29. CALDERON and WHITE approached the alley from Walnut Avenue, which is the portion of the vacant lot that has shrubbery, plants, and trees. The vacant lot and the alley were unilluminated except for the headlights/spotlights of the police cruisers and the officers' flashlights. CALDERON purposely positioned himself near the building and his cruiser for cover because he knew that the 911 caller indicated that the subject had a gun. CALDERON was armed with his LPD-issued AR-15, and could see DECEDENT moving

1   through the bushes. CALDERON commanded DECEDENT to stop and to show his hands.

2   DECDEDENT stood up and raised his left hand above his head, but did not say anything.

3   CALDERON'S action of approaching DECEDENT with an assault rifle and his

4   commands to DECEDENT, who was corralled by the positioning of the officers,

5   constituted an unlawful *detention* without probable cause or reasonable suspicion.

6        30.    As CALDERON and DECEDENT got closer to each other, CALDERON

7   could see that DECEDENT was wearing a full-face clown mask. DECEDENT started

8   running in CALDERON'S direction with his hands raised. When DECEDENT was 20-25

9   feet away, CALDERON says that he saw that DECEDENT had a large knife in his hand.

10  CALDERON kept giving commands to DECEDENT to stop, but DECEDENT kept

11  moving in the direction of CALDERON with the knife raised. When DECEDENT was

12  about 15-20 feet away, CALDERON fired his rifle at DECEDENT. CALDERON thought

13  his initial shot hit DECEDENT because CALDERON saw him flinch, but DECEDENT

14  kept running forward and CALDERON kept shooting until DECEDENT fell.

15  CALDERON fired his rifle a total of 4 times. CALDERON never saw a gun on the person,

16  in the hands, or vicinity of DECEDENT.

17       31.    WHITE also approached the alley from the Walnut Avenue side and used his

18  cruiser's spotlight to illuminate the shrubbery portion of the vacant lot. WHITE shouted

19  "Lompoc Police, show us your hands, show us your hands." WHITE'S use of the cruiser

20  spotlight and his verbal commands further escalated an unlawful *detention* without

21  probable cause or reasonable suspicion. DECEDENT did not respond, but did briefly raise

22  his arms in the air, while still in the bushes. When DECEDENT'S arms were in the air,

23  WHITE could see the DECEDENT'S hands because his sleeves were loosely-gathered at

24  the wrists and fell downward when he raised his arms. WHITE did not ever see a gun on

25  the person, in the hands, or vicinity of DECEDENT.

26       32.    DECEDENT them put his arms down and began pacing around in the

27  bushes before emerging from the bushes and quickly moving in the direction of

28  CALDERON. WHITE saw DECEDENT moving his hands in a windmill fashion, but

WHITE did not see any gun or other weapon in DECEDENT'S hands. WHITE began to re-holster his pistol, but as he did so DECEDENT got closer and WHITE says he saw light reflect off a large blade in DECEDENT'S right hand. WHITE drew his pistol again and when he heard CALDERON shooting, WHITE also started shooting---four times---until DECEDENT fell.

33.     At all times relevant, no bystander was in the immediate vicinity and none of the Defendant-officers were hemmed in, or unable, or incapable of quickly moving in one of several directions away from the approaching DECEDENT, who was shot while he was at least 20 – 25 feet away from the nearest officer, and who was not armed with a firearm.

34.      CALDERON and WHITE failed to give DECEDENT any warning that deadly force would be used prior to shooting. The shooting violated basic officer training with respect to the use of deadly force. The tactics were inappropriate and there were less than lethal force options available.

35.     After being shot with multiple rounds from a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants CALDERON, WHITE, CARRILLO and DOES 1-5 did not timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT's death.

36.     At all relevant times, DECEDENT was not the subject of any arrest, or search warrant, nor was there any probable cause, or even reasonable suspicion to believe that he was engaged in criminal activity. DECEDENT was merely walking down an alleyway in an unthreatening, lawful manner. His detention by WHITE, CALDERON and CARRILLO was not justified under all clearly established, long-standing Fourth Amendment jurisprudence, and was, therefore, unlawful.

37.     At all relevant times, including during the fusillade of police gunfire, DECEDENT was not armed with a firearm and was never proximate enough to any other person, including law enforcement, to constitute an imminent, or immediate threat to the

1 safety of anyone other than himself. Therefore, the shooting was excessive and

2 unreasonable, as most certainly was the shooting by WHITE, who was simply mimicking,

3 and reacting to, the behavior of CALDERON, who initiated the gunfire.

4      38.    Plaintiffs are the DECEDENT's successors in interest as defined in Sections

5 377.10(b) and 377.11 of the California Code of Civil Procedure, and Section 6402(c) of

6 the California Probate Code; they succeed to DECEDENT's interest in this action as the

7 natural MOTHER and natural FATHER of DECEDENT.

8 **<u>FIRST CLAIM FOR RELIEF</u>**

9 **Unreasonable Search and Seizure—Unlawful Detention and Arrest (42 U.S.C. § 1983)**

10 (Plaintiffs against Defendants WHITE, CALDERON and CARRILLO)

11      39.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

12 through 38 of this Complaint with the same force and effect as if fully set forth herein.

13      40.    The Fourth Amendment of the United States Constitution guarantees all

14 persons the right to be free from unreasonable detention in violation of their right to

15 privacy. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this

16 right. A "detention" occurs when law enforcement, by show of authority, deter a person

17 from going about his business. <u>See</u>, e.g., *U.S. v. Smith*, 794 F.3d 681, 685 (7th Cir. 2015)

18 ["…encounter in a dark alley, the threatening presence of multiple officers, the aggressive

19 nature of the questioning, and the fact that Smith's freedom of movement was physically

20 obstructed by the positioning of the officers…we conclude that a reasonable person in

21 Smith's situation would not have felt at liberty to ignore the police presence and go about

22 his business."]

23      41.    WHITE, CALDERON and CARRILLO violated DECEDENT's right to be

24 free from unreasonable search and seizures, which is guaranteed to him by the Fourth

25 Amendment to the United States Constitution and applied to state actors by the Fourteenth

26 Amendment. This was not a "consensual encounter," where "…[t]he person approached,

27 however, need not answer any question put to him; indeed, he may decline to listen to the

28 questions at all <u>and may go on his way</u>. [Citation.]  He may not be detained even

COMPLAINT FOR DAMAGES
9

1  momentarily without reasonable, objective grounds for doing so; and his refusal to listen or

2  answer does not, without more, furnish those grounds.  [Citation.]." *Florida v. Royer*, 460

3  U.S. 491, 497-498 (1983). Instead, commands were shouted, spotlights and flashlights

4  were shone on him, guns were drawn and pointed at him, and DECEDENT was corralled

5  into the vacant lot adjoining the alleyway.

6        42.    The detention of DECEDENT by WHITE, CALDERON and CARRILLO

7  was not justified under the Fourth Amendment because it was effected without probable

8  cause, or <u>reasonable</u> suspicion, as those predicates have been clearly defined and

9  established by long-settled Supreme Court jurisprudence. The anonymous 911 caller did

10  not convey information suggesting that the person-in-dark-clothing-carrying-a-gun was an

11  emergency situation, or that said person had brandished the gun in a threatening way, or by

12  words or conduct had threatened the anonymous caller. The Court in *Florida v. J.L.,* 529

13  U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), dealt with an anonymous caller

14  who told the police "that a young black male standing at a particular bus stop and wearing

15  a plaid shirt was carrying a gun." Police proceeded to the bus stop, frisked J.L.—who was

16  black and was wearing a plaid shirt—and seized a gun from his pocket. *See id.* The Court

17  held this tip insufficient to justify the investigatory stop. *See id.* at 274, 120 S.Ct. 1375. It

18  "lacked the moderate indicia of reliability present in *White* and essential to the Court's

19  decision in that case" because "[t]he anonymous call concerning J.L. provided no

20  predictive information and therefore left the police without means to test the informant's

21  knowledge or credibility." *Id.* at 270–71, 120 S.Ct. 1375. The Court explained that the tip

22  leading to J.L.'s arrest was "[a]n accurate description of a subject's readily observable

23  location and appearance" but "d[id] not show that the tipster ha[d] knowledge of concealed

24  criminal activity.... [R]easonable suspicion ... requires that a tip be reliable in its assertion

25  of illegality, not just in its tendency to identify a determinate person." *Id.* at 272, 120 S.Ct.

26  1375. The Court also declined to speculate about situations in which "the danger alleged in

27  an anonymous tip might be so great as to justify a search even without a showing of

28  reliability," such as "a report of a person carrying a bomb." *Id.* at 273, 120 S.Ct. 1375.

43.     At all relevant times, WHITE, CALDERON and CARRILLO acted under color of state law. Those officers had no reasonable suspicion to detain DECEDENT and no probable cause to arrest him because the anonymous 911 call did not even provide sufficient descriptive information about the person in the alley, e.g., height, weight, gender, ethnicity, age, etc. In addition to the detention itself being unreasonable, the scope and manner of the detention was unreasonable. It was not necessary to use deadly force against DECEDENT in order to lawfully detain him, e.g., Defendants could have sent a police dog into the shrubbery to roust him out, but they indisputably seized DECEDENT the instant their bullets struck his body. *Torres v. Madrid*, 141 S.Ct. 989, 999 (2021).

44.     The conduct of WHITE, CALDERON and CARRILLO was willful, oppressive, malicious, and a reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to WHITE, CALDERON and CARRILLO. As a direct result of the unreasonable detention and arrest, DECEDENT experienced severe pain, suffering and the loss of life and enjoyment of life, for which he, through his successors in interest, is entitled to recover damages.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

(Plaintiffs Against WHITE and CALDERON)

45.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 44 of their Complaint with the same force and effect as if fully set forth herein.

46.     On March 28, 2021, at approximately 8:08 p.m., what the Defendant-officers knew was that DECEDENT was ambling down the dark alley toward Walnut Avenue. He was wearing baggy clothing, including a "hoodie" that covered the back, sides and top of his head. His hands were in his pockets. He was not brandishing, or displaying any weapons, let alone a gun. He was not running, sprinting, or moving hurriedly. The Defendant-officers did not know if that person walking down the alley was male, or female, African-American, Mexican-American, or Anglo-American. The Defendant-officers did not know if that person walking down the alley was the same person the

1    anonymous 911 caller had reported to dispatch 4 or 5 minutes earlier.

2        47.    Defendant CARRILLO followed DECEDENT and repeatedly commanded

3    him to stop and show his hands, but at that time CARRILO did not have reasonable

4    suspicion to believe that DECEDENT had violated the law. Based on information and

5    belief, CARRILLO estimated that DECEDENT was approximately 5 feet tall. Based on

6    information and belief, CARRILLO knew that DECEDENT had a constitutional right to

7    ignore CARRILLO'S commands and continue on his way.

8        48.    Based on information and belief, DECEDENT perceived Defendants

9    WHITE and CALDERON, who also lacked reasonable suspicion that DECEDENT had

10   violated the law, were aware of his diminutive stature and his constitutional right to ignore

11   them and proceed on his way, approaching DECEDENT from Walnut Avenue, realized

12   that he could proceed neither forward nor backward in the alley due to the positioning of

13   the Defendant-officers, and elected to avoid an encounter with them by moving into the

14   shrubbery on the vacant lot abutting the alley.

15       49.    While acting under color of state law and in the course and scope of their

16   duties as police officers for the CITY, WHITE and CALDERON escalated the situation by

17   drawing their LPD-issued firearms, including an assault rifle, aiming them in the direction

18   of DECEDENT, who they also illuminated with the spotlights and headlights of their

19   vehicles, and repeatedly commanded DECEDENT to come out and show his hands, which

20   DECEDENT initially did by standing up and raising his arms.

21       50.    When DECEDENT did move quickly out of the bushes and in the direction

22   of CALDERON, but before either CALDERON or WHITE were clearly able to see any

23   knife, and well before DECEDENT was "within striking distance" (*Kisela v. Hughes*, 138

24   S.Ct. 1148, 1154 (2018)) of any person, WHITE and CALDERON fired multiple shots at

25   DECEDENT, striking and injuring DECEDENT and ultimately killing him.

26       51.    At all relevant times, including during all of the shots, WHITE and

27   CALDERON were unaware of any prior history of physical violence by DECEDENT

28   against any person, including against the anonymous 911 caller, and any reasonably well-

trained law enforcement officer would have been aware that when CALDERON and WHITE began shooting, neither of them, nor any fellow officer or bystander was in imminent, or immediate threat of death or serious bodily injury. Therefore, the shooting was excessive and unreasonable. DECEDENT was following the Defendant-officers' commands and had raised his hands in surrender.

52.     On information and belief, WHITE and CALDERON failed to give DECEDENT a warning that deadly force would be used prior to shooting. The shooting violated basic police officer training.

53.     WHITE'S and CALDERON'S unjustified shooting and other uses, or displays of force against DECEDENT deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

54.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, which purportedly occurred as he lay helpless but handcuffed and face-down on the alleyway; he further suffered loss of enjoyment of life, loss of life, and lost earning capacity.

55.     The conduct of WHITE and CALDERON was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to WHITE and CALDERON.

56.     Plaintiffs bring this claim as successors-in-interest to DECEDENT. Plaintiffs seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

57.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

///

///

**THIRD CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Plaintiffs against Defendants WHITE, CALDERON, CARRILLO and DOES 1-5)

58.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 57 of their Complaint with the same force and effect as if fully set forth herein.

59.     After being shot with lethal firearms, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants WHITE, CALDERON, CARRILLO and DOES 1-5 did not timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

60.     The denial of medical care by WHITE, CALDERON, CARRILLO and DOES 1-5 deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

61.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

62.     WHITE, CALDERON, CARRILLO and DOES 1-5 knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

63.     DECEDENT survived for a period of time after incident. He died at the shooting scene.

64.     The conduct of WHITE, CALDERON, CARRILLO and DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to WHITE, CALDERON, CARRILLO and DOES 1-5.

65.     Plaintiffs bring this claim as successors-in-interest to DECEDENT. Plaintiffs seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

66.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### FOURTH CLAIM FOR RELIEF

**Fourteenth Amendment-Substantive Due Process (42 U.S.C. § 1983)**

(Plaintiffs against Defendants WHITE and CALDERON)

67.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.     WHITE and CALDERON acted under color of state law at all relevant times.

69.     By engaging in the foregoing conduct, WHITE and CALDERON deprived Plaintiffs of their rights to a familial relationship with DECEDENT in such a manner as to shock the conscience, including by using excessive and unreasonable deadly force against him and by denying him medical care, all of which caused injuries that resulted in DECEDENT's death. This conduct violated Plaintiffs' rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

70.     By engaging in the foregoing conduct, WHITE and CALDERON acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective. WHITE and CALDERON are liable to Plaintiffs for the interference with their familial relationship.

71.     Plaintiffs bring this claim individually and seek wrongful death damages under this claim.

72.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

////

## FIFTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy; Ratification (42 U.S.C. § 1983)**

(Plaintiffs against Defendant CITY and DOES 6-10)

73.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 72 of their Complaint with the same force and effect as if fully set forth herein.

74.     WHITE, CALDERON and CARRILLO acted under color of law at all relevant times, including during the shooting.

75.     DOES 1-10 acted under color of law at all relevant times.

76.     When WHITE and CALDERON unlawfully detained and arrested DECEDENT and then fatally shot DECEDENT while he was not armed with a firearm and was committing no crime, and also when WHITE and CALDERON denied DECEDENT prompt and necessary medical care after they shot DECEDENT, WHITE and CALDERON acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

77.     When DOES 1-5 denied DECEDENT prompt and necessary medical care after the shooting of DECEDENT, DOES 1-5 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

78.     On information and belief, neither WHITE, CALDERON, nor CARRILLO was disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's detention, seizure and death.

79.     On information and belief, DOES 1-5 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

80.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning WHITE'S, CALDERON'S and CARRILLO'S acts, ratified their acts and the bases for them. Upon information and belief, the final policymakers knew of and specifically approved of WHITE'S, CALDERON'S and CARRILLO'S acts, including the detention, arrest and shooting. Upon information

and belief, the final policymaker(s) have determined that WHITE'S, CALDERON'S and CARRILLO'S actions were "within policy."

81.   Defendants DOES 6-10 together with other CITY policymakers and supervisors, maintained, *inter alia*, the following unconstitutional customs, practices, and policies, notwithstanding the existence of written, for-public-consumption, practices and policies to the contrary:

> (**a**) Using excessive force, including excessive use of deadly force;
> (**b**) Providing inadequate training regarding the use of deadly force, and providing inadequate training with respect to handling situations involving mentally ill individuals and de-escalating a situation involving a mentally ill individual;
> (**c**) Employing and retaining as police officers individuals such as WHITE, CALDERON and CARRILLO, whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;
> (**d**) Inadequately supervising, training, controlling, assigning, and disciplining CITY police officers and other personnel, including WHITE, CALDERON and CARRILLO, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a failure to train with respect to the use of deadly force and de-escalating situations involving mentally ill individuals;
> (**e**) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY police officers;
> (f) Failing to adequately discipline CITY officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;
> (**g**) Announcing that unjustified shootings are "within policy," including shootings that were later determined in prelitigation settlements, or by court to be unconstitutional;
> (**h**) Even where shootings are determined in prelitigation settlement or court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;
> (**i**) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which law enforcement officers do not report other officers' errors, misconduct, or crimes. Pursuant to

this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and **(j)** Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

82.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

83.     Defendants CITY and DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.

84.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 6-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT'S and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 6-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

85.     Indeed, just 3 and ½ years prior to the killing of DECEDENT, Defendants CITY and DOES 6 – 10 were made keenly aware of their failure to properly train its/their police officers when the CITY was compelled to pay over $300,000 to the parents of 27-year old Michael D. Giles, who purportedly had threatened people in a laundromat before running across H Street, and hiding in some bushes until he was happened upon by Lompoc Police Corporal Scott, who shot Mr. Giles, from a distance of 10 feet or less, after Mr. Giles purportedly refused to drop his knife and instead lunged at Cpl. Scott.

86.     Accordingly, Defendants CITY and DOES 6-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

87.     Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT. Plaintiffs seek wrongful death and survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

88.     Plaintiffs also seek statutory attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SIXTH CLAIM FOR RELIEF

**Battery** (wrongful death and survival claim)

(Plaintiffs against Defendants WHITE, CALDERON and CITY)

89.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 88 of their Complaint with the same force and effect as if fully set forth herein.

90.     WHITE and CALDERON, while working and acting within the course and scope of their duties as police officers for CITY'S Police Department (LPD), shot DECEDENT. At the time of the shooting, DECEDENT posed no immediate threat of death or serious bodily injury to WHITE, CALDERON or to anyone else. The shooting was excessive and objectively unreasonable.

91.     As a direct and proximate result of the shots fired by WHITE and CALDERON as alleged above, DECEDENT sustained injuries, died from his injuries and also lost his earning capacity. As a direct and proximate result of WHITE'S and CALDERON'S shots and other misconduct as set forth herein, DECEDENT suffered survival damages pursuant to Code of Civil Procedure Section 377.34.

92.     The CITY is vicariously liable for the wrongful acts of WHITE and CALDERON and as individuals and successor-in-interest to KRYS BRANDON RUIZ, deceased pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

93.     The conduct of WHITE and CALDERON was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and

1  DECEDENT, entitling Plaintiffs, individually and as the successors in interest to

2  DECEDENT, to an award of exemplary and punitive damages as to WHITE and

3  CALDERON.

4    94.    Plaintiffs bring this claim individually and as successors-in-interest to

5  DECEDENT. Plaintiffs seek wrongful death and survival damages on this claim.

6  <u>**SEVENTH CLAIM FOR RELIEF**</u>

7  **Negligence** (wrongful death and survival claim)

8  (Against all Defendants)

9    95.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

10  through 94 of their Complaint with the same force and effect as if fully set forth herein.

11    96.    Police officers, including WHITE, CALDERON and CARRILLO, have a

12  duty to use reasonable care to prevent harm or injury to others. This duty includes using

13  appropriate tactics, giving appropriate commands, giving warnings, and not using any

14  force unless necessary, using less than lethal options, and only using deadly force as a last

15  resort.

16    97.    WHITE, CALDERON, CARRILLO and DOES 1-10 breached this duty of

17  care. The actions and inactions of Defendants WHITE, CALDERON, CARRILLO and

18  DOES 1-10 were negligent and reckless, including but not limited to:

19      **(a)** the failure to properly and adequately assess the need to use deadly
20      force against DECEDENT;
        **(b)** the negligent tactics and handling of the situation with
21      DECEDENT, including pre-shooting negligence;
        **(c)** the negligent use of deadly force against DECEDENT;
22      **(d)** the failure to provide prompt medical care to DECEDENT;
        **(e)** the failure to properly train and supervise WHITE and CALDERON
23      with respect to the use of deadly force;
        **(f)** the failure to ensure that adequate numbers of employees with
24      appropriate education and training were available to meet the needs of
25      and protect the rights of DECEDENT; and
        **(g)** the negligent communication of information during the incident.
26

27    98. As a direct and proximate result of Defendants' conduct as alleged above, and

28  other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and

1  suffering and ultimately died. Also as a direct and proximate result of Defendants' conduct

2  as alleged above, Plaintiffs have been deprived of the life-long love, companionship,

3  comfort, support, society, care and sustenance of DECEDENT, and will continue to be so

4  deprived for the remainder of their natural lives.

5        99.    The CITY is vicariously liable for the wrongful acts of WHITE,

6  CALDERON, CARRILLO and Defendants DOES 1-10 pursuant to section 815.2(a) of the

7  California Government Code, which provides that a public entity is liable for the injuries

8  caused by its employees within the scope of the employment if the employee's act would

9  subject him or her to liability.

10       100.   Plaintiffs bring this claim individually and as successors-in-interest to

11  DECEDENT. Plaintiffs seek wrongful death and survival damages on this claim, including

12  for DECEDENT's loss of life and loss of enjoyment of life.

13                        **EIGHTH CLAIM FOR RELIEF**

14      **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

15            (Against Defendants CITY and DOES 6-10)

16       101.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

17  through 100 of their Complaint with the same force and effect as if fully set forth herein.

18       102.   Defendants WHITE, CALDERON and CARRILLO acted under color of

19  law.

20       104.   WHITE'S, CALDERON'S and CARRILLO'S acts, including unlawfully

21  detaining and arresting DECEDENT, fatally shooting DECEDENT while he was

22  committing no crime, failing to give a warning that deadly force would be used prior to

23  shooting, and then denying DECEDENT prompt and necessary medical care,

24  deprived DECEDENT and Plaintiffs of their particular rights under the United States

25  Constitution.

26       105.   The training policies of Defendant CITY were not adequate to train its

27  officers to handle the usual and recurring situations with which they must deal. This

28  includes training polices with respect to the use of the use of force, including deadly force,

1 and with respect to handling and de-escalating situations.

2 106. Defendant CITY was deliberately indifferent to the obvious consequences of

3 its failure to train its officers adequately.

4 107. The failure of Defendant CITY to provide adequate training caused the

5 deprivation of Plaintiffs' rights by WHITE, CALDERON and CARRILLO; that is, the

6 CITY'S failure to train is so closely related to the deprivation of the Plaintiffs' rights as to

7 be the moving force that caused the ultimate injury. CITY at all times relevant was aware

8 of its failings in this regard, having so recently paid a hefty settlement for eerily similar

9 acts and omissions that resulted in the shooting death of Michael D. Giles, as set forth in

10 paragraph 85, *ante*.

11 108. By reason of the aforementioned acts and omissions, Plaintiffs have suffered

12 loss of the love, companionship, affection, comfort, care, society, training, guidance, and

13 past and future support of DECEDENT. The aforementioned acts and omissions also

14 caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

15 109. Accordingly, Defendants CITY and DOES 6-10 each are liable to Plaintiffs

16 for compensatory damages under 42 U.S.C. § 1983.

17 110. Plaintiffs bring this claim individually and as successors-in-interest to

18 DECEDENT. Plaintiffs seek survival damages and wrongful death damages on this claim,

19 including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss

20 of enjoyment of life.

21 111. Plaintiffs also seek statutory attorneys' fees pursuant to 42 U.S.C. § 1988 and

22 costs of suit.

23 ## NINTH CLAIM FOR RELIEF

24 ### (Violation of Cal. Civil Code § 52.1)

25 (Against all Defendants)

26 112. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

27 through 111 of their Complaint with the same force and effect as if fully set forth herein.

28 113. California Civil Code, Section 52.1 (the Bane Act), prohibits any person

from intentionally interfering with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights. Here, WHITE, CALDERON and CARRILLO acted with a reckless disregard for DECEDENT's constitutional rights when they unlawfully attempted to detain, and then did detain and thereafter shot him, which shows their intent to violate DECEDENT's constitutional rights.

114.   On information and belief, WHITE, CALDERON and CARRILLO, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including fatally shooting him with a firearm without justification or excuse and denying him necessary medical care.

115.   When WHITE and CALDERON fatally shot DECEDENT with firearms, they interfered with his constitutional rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

116.   On information and belief, WHITE and CALDERON intentionally shot DECEDENT and violated DECEDENT's constitutional rights. On information and belief, DECEDENT reasonably believed and understood that WHITE and CALDERON intended to shot DECEDENT and intentionally shot him to violate his constitutional rights and/or to prevent him from exercising his constitutional rights. WHITE'S and CALDERON'S actions against DECEDENT were unreasonable and showed reckless disregard for DECEDENT's constitutional rights.

117.   The conduct of WHITE, CALDERON and CARRILLO was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

118.   The CITY is vicariously liable for the wrongful acts of WHITE, CALDERON, CARRILLO and Defendants DOES 1-5 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendants DOES 6-10 are vicariously liable under

1  California law and the doctrine of *respondeat superior*.

2      119.    The conduct of WHITE, CALDERON and CARRILLO was malicious,

3  wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and

4  Plaintiffs' rights, justifying an award of exemplary and punitive damages as to those

5  defendants.

6      120.    Plaintiffs bring this claim as successors-in-interest to DECEDENT. Plaintiffs

7  seek survival damages on this claim, including for DECEDENT's injuries, pre-death pain

8  and suffering and loss of life and loss of enjoyment of life.

9      131.    Plaintiffs also seek attorney's fees and a multiplier under this claim pursuant

10  to Cal. Civ. Code §52 *et seq*.

11                        **PRAYER FOR RELIEF**

12      **WHEREFORE**, Plaintiffs DIONNE ESPINOZA and JAIME RUIZ request entry

13  of judgment in their favor and against Defendants CITY OF LOMPOC, ANDREW S.

14  WHITE, MAURICIO T. CALDERON, JULIO C. CARRILLO-BUENO, and Does 1-10,

15  inclusive, as follows:

16      **1**.    For compensatory damages, including both survival damages and wrongful

17  death damages under federal and state law, in the amount to be proven at trial;

18      **2**.    For loss of financial support;

19      **3**.    For punitive damages against the individual defendants in an amount to be

20  proven at trial;

21      **4**.    For interest at the legal rate;

22      **5**.    For reasonable attorneys' fees, including litigation expenses;

23      **6**.    For costs of suit; and

24      **7**.    For such further other relief as the Court may deem just, right and proper.

25  Dated: October 28, 2021.

26

27                              */s/ William L. Schmidt*
                                WILLIAM L. SCHMIDT
28                              Attorney for Plaintiffs

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs do hereby demand a trial by jury.

3

Dated: October 28, 2021.

4

5

/s/*William L. Schmidt*
WILLIAM L. SCHMIDT

6

Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28